**In re Donald PATELLA and Anna Marie Patella, dba Video Cassette Rentals, Debtors.**

**Bankruptcy No. 7–88–02360 R A.**

United States Bankruptcy Court, D. New Mexico.

July 28, 1989.

Brian LaMatta, Albuquerque, N.M., for debtors.

Steve Mazer, Albuquerque, N.M., trustee.

MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

Before the Court today is the interpretation of 11 U.S.C. § 365(d)(3), a provision providing for treatment of certain lease obligations by the trustee during the sixty day period allowed for assumption or rejection of the lease. Procedurally, the issue arises upon the trustee's objection to the proof of claim filed by CBS Property Services, Inc. The trustee's objection is sustained without prejudice to the creditor to prove its claim as an administrative expense.

FACTS

Donald and Anna Marie Patella, d/b/a Video Cassette Rentals, filed their Chapter 7 petition on October 14, 1988. Among the business leases held by the debtors was the Eubank store, leased from CBS. On their Statement of Intention, the debtors indicated that they would surrender the lease. The evidence is unclear, but seems to suggest that when the petition was filed, the debtors did not occupy and were not using the premises. The trustee did not take possession of or use the premises.

On November 16, 1988, CBS, the trustee and the debtors filed a joint motion to reject the lease. Notice was sent to all creditors the same day, allowing twenty days for objections to rejection of the lease. No objections were filed. An order approving rejection of the lease was submitted to the Court and entered on February 1, 1989.

Claim No. 5 was filed by CBS on November 22, 1988. The claim states that CBS considered the lease "deemed rejected" as of November 16, 1988. CBS claims $1,653.72 as rent from October 14, 1988 to November 16, 1988. CBS, on the claim form, cites 11 U.S.C. § 365(d)(3) and 11 U.S.C. § 503(b) and requests administrative expense treatment.

Trustee Mazer filed his objection to CBS' claim on July 10, 1989, in the process of preparing his final account and report.

## DISCUSSION

The trustee's objection simply states that "... the rents claim during that period [October 14, 1988 to November 16, 1988] did not benefit the estate and therefore the priority claim should be denied ..." and given unsecured status. CBS countered by citing a number of cases clearly supporting its position that § 365(d)(3) mandates automatic administrative expense treatment for its rent claim. CBS suggests that § 365(d)(3) requires that rent be paid, at the amount stated in the lease, for the shorter of the sixty day period following the filing of the petition, or until the lease is rejected or deemed rejected. The relevant portion of § 365(d)(3) states:

> (3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60 day period.

11 U.S.C. § 365(d)(3).

The legislative history states:

> [The second] problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position....

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong.Rec. § 8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch)

Prior to the 1984 amendments, which added § 365(d)(3), the law was that "until assumption or rejection of the debtor's lease, the estate is liable only for the reasonable value of the use and occupancy of the premises." *In re Orvco, Inc.*, 95 B.R. 724 (9th Cir. BAP 1989) (quoting 2 L. King. *Collier on Bankruptcy*, para. 365.03[3] at 365–32 (15th Ed.1987)). Most courts have held that section 365(d)(3) mandates the continued payment by the debtor of the full rent due under the lease for the 60–day period following the date the petition is filed, even when the lease is ultimately rejected. The fair market value of the leased premises or the extent of the debtor's occupancy is not an issue. See, *e.g.*, *In re National Oil Co.*, 80 B.R. 525, 527 (Bankr.D.Colo.1987) (rejecting argument that amount due should be based upon fair market value of lease and not the lease amount); *In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879 (Bankr.E.D.N.Y. 1986) (granting full lease amount as administrative claim even though debtor only occupied 10 percent of leased premises).

In fact, the argument usually is whether the landlord should be given superpriority treatment in the form of immediate payment in full rather than (possibly) pro-rata administrative treatment. *See, e.g., In re Granada, Inc.*, 88 B.R. 369 (Bankr.D.Utah 1988).

In short, the majority of the cases all assume that § 363(d)(3) mandates automatic administrative expense treatment of the amount provided for in the lease.[1] This

---

1. *In re Damianopoulos*, 93 B.R. 3 (Bankr.N.D.N. Y.1988); *In re Gillis*, 92 B.R. 461 (Bankr.D.Haw. 1988); *In re Industrial Distrib. Serv. Inc.*, 86 B.R. 718 (Bankr.M.D.Fla.1988); *In re O.P. Held, Inc.*, 77 B.R. 388 (Bankr.N.D.N.Y.1987); *In re TDC Dev. Corp.*, 73 B.R. 135 (Bankr.N.D.Tex.1987);

rationale may have lead to the correct result in these cases, but will lead to an unjust and unintended result in this case. It would pay a lessor when the premises were always available to it and vacant.

The Court rejects the rationale as espoused in *Granada,* and instead adopts the reasoning of *In re Orvco Inc.,* 95 B.R. 724 (9th Cir.BAP 1989). A lengthy quotation from *Orvco* will best state the Court's position:

> We disagree with the conclusion reached by these cases to the extent they declare an administrative status or super-priority status for such claims. In our view, section 365(d)(3) is not determinative in a situation where a lease has been deemed rejected. As noted by one commentator:
>
>> An issue not squarely addressed by the amendments to section 365(d) arises in cases in which the debtor does not timely perform its obligations under a nonresidential property lease and neither assumes or rejects the lease within 60 days of the order for relief. In such a case one issue is whether the lessor is entitled by section 365(d) to an administrative priority claim for the full contractual rent for the 60 days or whether the lessor must establish its claim for reasonable administrative rent under section 503(b)(1)(A) for the debtor's use of property.
>>
>> 3 L. King, Collier on Bankruptcy, para. 503.04[ii] at p. 503–27, n. 22 (15th Ed. 1987). Section 365(d)(3) provides that the trustee "shall" timely perform the obligations of the debtor, and upon motion of the lessor, the court shall order full rental payments pending assumption or rejection. If the debtor is unwilling or unable to pay, however, section 365(d)(3) "does not expressly state what consequences follow from a ... violation of its terms." *In re Southwest Aircraft Services Inc.,* 831 F.2d 848, 853 (9th Cir.1987). In *Southwest Aircraft* the Ninth Circuit stated:

> We believe that Congress intended the bankruptcy courts to have the discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of subsection (d)(3) should be forfeiture of the assumed lease, some other penalty, or no penalty at all.
>
> *Id.,* 831 F.2d at 854. Under this section a bankruptcy court has the discretion to order the immediate surrender of the leased premises if a debtor fails to make the required payments. However, once a lease is deemed rejected, the language of the section does not attempt to determine the administrative claim status of rent obligation. Nothing in the language of the section requires administrative or, worse yet, super-administrative status. In our view, the language of 365(d)(3), "notwithstanding section 503(b)(1)", means that notwithstanding the administrative or non-administrative status of a claim by a lessor, a bankruptcy court must order its payment pending assumption or rejection. It does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under section 503(b)(1)(A) has been completely abrogated. Accordingly, we hold that when a lease is deemed rejected, a lessor must establish its claim for administrative status under section 503(b)(1)(A), the specific section governing such status.

*Orvco, Inc.,* at 727–28.

 This Court believes the law to be correctly stated as follows: If a lessor is not paid by the trustee and then petitions the Court, during the 60 day period and prior to rejection, for payment of rent, then the Court must order that rent be paid in the amount stated in the lease. If the trustee or debtor can't or won't pay, the Court may, in its discretion, order immediate vacation of the premises. Failure to pay jeopardizes the debtor's or trustee's right to assume the lease later. If the lease is then rejected or deemed rejected

*In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969 (Bankr.E.D.Pa.1987); *In re M.H.I., Inc.,* 61 B.R. 69 (Bankr.D.Md.1986); *In re*

*Swanton Corp.,* 58 B.R. 474 (Bankr.S.D.N.Y. 1986); and *In re Fisher & Fisher, Inc.,* 51 B.R. 680 (Bankr.S.D.Ohio 1985).

and the lessor has been in fact paid the full amount due under the lease, then § 365(d)(3) allows the lessor to keep the money. Disgorgement will not be ordered by the Court, even if the lessor received what amounts to superpriority treatment. If the lease is rejected without any payment to the lessor, then § 365(d)(3) does not do away with the necessity of proving an administrative expense under § 503(b)(1)(A).

In this case, CBS made no demand for payment during that portion sixty day period preceding the joint motion to reject the lease. It did not petition the Court for payment and it received no payment. Section 365(d)(3) will not, under these facts, automatically give CBS administrative expense treatment at the amount stated in the lease.

Accordingly, the claim of CBS for automatic administrative treatment, claim No. 5, is denied without prejudice to proof that it is in fact a true administrative expense.

CBS shall have thirty days to file an appropriate motion seeking administrative treatment. The trustee shall prepare an appropriate order reflecting the ruling of the Court.