**In re NARRAGANSETT CLOTHING CO., Debtor.**

**Bankruptcy No. 90–10149.**

United States Bankruptcy Court, D. Rhode Island.

Oct. 4, 1990.

---

Allan M. Shine, Cary J. Coen, Winograd, Shine & Zacks, P.C., Providence, R.I., for trustee.

David L. Pollack, Rosenwald and Pollack, Philadelphia, Pa., for Rouse Co.

Robert S. Parker, Temkin & Miller, Providence, R.I., for White Flint Mall.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on July 17, 1990 on the Motion of the Rouse Company[1], ("Rouse"), for an order directing the debtor to perform certain obligations pursuant to 11 U.S.C. § 365(d)(3), to wit: payment of postpetition rent, late charges, attorneys' fees and costs. The debtor operates a chain of women's high quality retail clothing stores located throughout the Eastern states, and concentrated in New England. Each store has its own leasehold arrangement, and of

the 40 locations, there are approximately 35 individual lessors. From the outset the Trustee has acknowledged his obligation to pay postpetition rent, but has consistently failed to comply with orders specifically directing him to do so. *See* Orders dated April 19 and May 22, 1990. In the present dispute, he again acknowledges the rent obligation, but strongly opposes the lessors' demands for attorneys' fees, late charges and costs.

The charges and fees in question have accumulated during prolonged negotiations and contested proceedings between these parties, illustrated by the partial chronology of events since February 5, 1990, the date the Chapter 11 petition was filed.

On March 7, 1990, the Trustee filed the first of several motions to extend time to assume or reject non-residential real estate leases. Numerous objections were filed, as well as a motion by White Flint to compel the debtor to assume or reject its lease. (*See* docket entries 28, 29, 32, and 40). After hearing on these matters on March 22, 1990, we granted the debtor's request to extend time until April 11, 1990, and also scheduled a continued hearing on that date. (*See* Order dated April 5, 1990, docket entry 55).

Prior to the April 11 hearing, additional objections were made by various lessors, (*see* docket entries 42, 43, 58, 60, and 62), as well as the instant motion by Rouse to compel the debtor to perform its obligations pursuant to § 365(d) (docket entry 61). Clearly, throughout these proceedings, Rouse and White Flint have aggressively pursued their contractual and statutory rights to either possession or compensation, and they have not waived any rights against the Trustee. At the conclusion of the April 11, 1990 hearing we issued a bench decision ordering that: (1) the time to assume or reject leases was extended again, to May 14, 1990; (2) In addition, the Trustee was ordered to pay, by April 21, 1990, all rent which became due after April 6, 1990; and (3) if the Trustee failed to pay

---

1. At the hearing, another lessor, White Flint Mall ("White Flint"), also pressing for the payment of postpetition rent and attorneys' fees, joined in the subject motion.

the rent referred to in item 2 above, then said lease would be deemed rejected, without further order. (*See* Stipulation and Order dated April 19, 1990, docket entry 72).

On May 11, 1990, the Trustee filed a second request to extend time, which motion was heard on (the continued date of) May 14, 1990. After hearing, we ruled that: (1) the time to assume or reject said leases was extended for yet a third time, this one to July 17, 1990; (2) the Trustee was ordered to continue to pay all postpetition rent which became due after April 6, 1990, pursuant to the individual leases; (3) by June 14, 1990, the Trustee was to cure all unpaid rent which accrued during the period February 5 through March 5, 1990; (4) by July 14, 1990, the Trustee was to cure all unpaid rent which accrued during the period March 5 through April 5, 1990; and (5) if the Trustee failed to meet any rental obligation set forth in paragraphs 2, 3 or 4 above, then any such lease would be deemed rejected, without further order of this Court. (*See* Stipulation and Order dated May 22, 1990, docket entry 98 and 99).

On June 21, 1990, White Flint, by its general partner, Mark D. Lerner, filed an affidavit declaring that the Trustee's failure to comply with the May 22, 1990 Order triggered the automatic rejection of its lease (because rent had not been paid by the specified dates), and entitled White Flint to immediate possession. (*See* docket entry 105).

A subsequent hearing was held on July 17, 1990 on: (1) the continued motion of the Trustee to extend the time to assume or reject leases; and (2) Rouse's motion to compel the Trustee to perform his obligations pursuant to § 365(d). After hearing, we continued the Trustee's motion to extend time to August 16, 1990, and took under advisement Rouse's motion to compel. With respect to the motion to compel, Rouse and White Flint demand the immediate payment of past due rent, as well as late charges, expenses and attorneys' fees. The parties were able to agree on the amount of rent due, but the Trustee disputes any claim by the lessors for attor-

neys' fees, expenses and late charges. After argument, the Court requested memoranda addressing the lessors' claims for these additional items, and the parties have complied.

In support of their contention that they are entitled to attorneys' fees, late charges and expenses, Rouse and White Flint ("the lessors") rely on § 365(d)(3), which provides in pertinent part that:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

The lessors argue that since the leases in question specifically provide for the payment of attorneys' fees, expenses and late charges in the event of default by the tenant, § 365(d)(3) entitles them to such payment, and that the only issue is the reasonableness of such charges. The Trustee argues that once the leases are deemed rejected, then § 365(d)(3) no longer applies, and instead, the lessors' claims are limited to the provisions of § 503(b)(1)(A), the administrative expense statute. In making this argument, the Trustee relies primarily on two recent decisions, *Great Western Savings Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724 (9th Cir. BAP, 1989) and *In re Patella*, 102 B.R. 223 (Bankr.D.N.M.1989). These decisions hold that "when a lease is deemed rejected, a lessor must establish its claim for administrative status under section 503(b)(1)(A), the specific section governing such status." *In re Orvco, supra* at 728; *In re Patella, supra* at 225 (adopting the holding and rationale of *In re Orvco, supra*). However, the *Patella* Court makes an interesting observation: "[i]f a lessor is not paid by the trustee and then petitions the Court, during the 60 day period and prior to rejection, for payment of rent, then the Court must order that rent be paid in the amount stated in the lease.... If the lease is rejected without any payment to the lessor, then § 365(d)(3) does not do away with the

necessity of proving an administrative expense under § 503(b)(1)(A)." *In re Patella, supra* at 225–226. Because the lessor in *Patella* made no demand for the payment of rent prior to the time the trustee rejected the lease, the Court held that "section 365(d)(3) will not, *under these facts*, automatically give CBS administrative expense treatment at the amount stated in the lease." *Id.* at 226 (emphasis added).

■ In the instant case, the leases in question were deemed rejected on June 15, 1990 [2]. However, unlike the more passive lessor in *In re Patella, supra*, Rouse made demand for the payment of rent as early as April 9, 1990, when it filed its motion to compel the debtor to perform its obligations pursuant to § 365(d). Thereafter, Rouse kept the pressure on as numerous hearings were held and orders entered directing the Trustee to pay ongoing rent and to cure the other unpaid obligations which accrued during the 60 day period after the filing of the petition. For reasons which he considered to be in the best interest of the estate, the Trustee chose not to comply with these orders, and eventually his failure to pay resulted in rejection of the leases. In these circumstances, the Trustee loses the argument that while he is deciding whether to assume or reject a lease, he is excused from compliance with specific court orders, as well as his statutory obligations under the Code, and that after rejection, § 365(d) no longer applies and the lessor is left only with its rights under § 503. Such a convenient and obvious circumvention of § 365(d) during the initial 60 day period (and any extensions thereof) could not have been intended by the drafters of the Code. "No other creditor is put in this position ... The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will

insure that debtor-tenants pay their rent, common area, *and other charges* on time pending the trustee's assumption or rejection of the lease." *In re Wingspread Corp.*, 116 B.R. 915 (Bankr.S.D.N.Y.1990) (emphasis added), (citing 130 Cong.Rec. S8894, S8895 (daily ed. June 29, 1984) (statement of Sen. Hatch)); *see also, In re Galvan*, 57 B.R. 732 (Bankr.S.D.Ca.1986) (Section 365(d)(3) entitles lessor to immediate payment of rent from date case filed to date lease is actually rejected). To the extent that *In re Orvco, Inc., supra*, holds to the contrary, we decline to follow it.

Judge Brozman, in *In re Wingspread Corp., supra*, also rejected the Ninth Circuit Bankruptcy Appellate Panel's holding in *In re Orvco*, and ruled that "in agreement with pre–*Orvco* decisions, ... during the 60 days after an order for relief is entered or within such extensions as are granted by the court prior to assumption or rejection, the debtor must pay the rent reserved under the lease." *Id.* at 926. We agree with the conclusion in *Wingspread*, and with that Court's reasoning underlying its rejection of the *Orvco* decision.

■ Our concurrence with *In re Wingspread Corp.*, however, does not entirely dispose of the issue before us. Although the leases in question provide for the payment of interest, expenses and attorneys' fees upon default by the tenant, we are not convinced that such charges were intended to be included under § 365(d)(3), in the usual circumstance where the lessor seeks to enforce that provision pending assumption/rejection, *and, where the trustee complies*. In fact, we agree with the Trustee that the cases cited by the lessors in support of their request for such charges all involve leases that were eventually assumed by the Trustee.

Based upon the entire record of these proceedings, however, including: the actions of the Trustee; the frustrated efforts of two diligent lessors to collect postpeti-

---

**2.** At the July 17, 1990 hearing, the Rouse Company, without objection by the Trustee, sought payment of postpetition rent through June 15, 1990. Likewise, White Flint stated that it was seeking rent through June 15, 1990, when possession of the premises was surrendered to the lessor. In addition, in their memoranda, the Rouse Company and White Flint both refer to June 15, 1990 as the date the leases were deemed rejected. We see nothing in the record of this case to contradict June 15, 1990 as the date the subject leases were rejected.

tion rent; and the ultimate rejection of their leases, with no rent having been paid as of July 17, 1990; this clearly is an appropriate case for the award of interest, expenses and attorneys' fees. Accordingly, we make the following rulings pursuant to our authority under 11 U.S.C. § 105:

1. The Trustee shall pay interest to Rouse and White Flint on the unpaid rent, at the prevailing legal rate, from the date payment was due (per our Orders dated April 19, and May 22, 1990), until the date the Trustee tenders such payment;

2. Both Rouse and White Flint are entitled to reasonable attorneys' fees and expenses incurred in attempting to obtain compliance with Court orders requiring the Trustee to pay postpetition rent. Counsel for said lessors are requested to submit revised fee applications specifically addressing this time period, and subject matter;

3. Claims for additional rent and/or charges [3] sought after the June 15, 1990 rejection date are governed by § 502(g) [4]. "Rejection of any executory contract constitutes breach of that contract, which breach relates back to the date immediately before the filing of the bankruptcy petition; accordingly, claims may be filed against the estate for all losses attributable to nonperformance of the contract." *International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. IML Freight, Inc.,* 789 F.2d 1460 (10th Cir.1986).

Enter Judgment consistent with this opinion.

---

**3.** With the exception of those allowed in connection with items 1 and 2 above.

**4.** Section 502(g) provides:

"A claim arising from the rejection, under section 365 of this title ... of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."