**In re GANTOS, INC., d/b/a Gantos, Gantos Boutique, Gantos Bargain Boutique, a Michigan corporation, Debtor.**

**In re GANTOS STORES, INC., d/b/a Gantos Finance, Inc., a Michigan corporation, Debtor.**

**Bankruptcy Nos. SG 93–85478, SG 93–85749.**

United States Bankruptcy Court, W.D. Michigan, Southern Division.

May 11, 1995.

Jones, Day, Reavis & Pogue (Cory Lipoff, argued and briefed, Sean D. Malloy and James M. Hall, briefed), Chicago, IL, and Dunn, Schouten & Snoap (Thomas W. Schouten and Perry G. Pastula, briefed),

Grand Rapids, MI, for debtors Gantos, Inc. and Gantos Stores, Inc.

Peper, Martin, Jensen, Maichel and Hetlage (Michael A. Clithero, argued and briefed), St. Louis, MO, for Northwest Plaza Associates Landlord.

Wilson & McIlvaine (Thomas J. Magill, argued and briefed), Chicago, IL, for Equitable Life Assur. Soc. of the U.S.

**OPINION GRANTING DEBTORS' MOTION FOR SUMMARY JUDGMENT REGARDING DEBTORS' OBJECTION TO CLAIM OF NORTHWEST PLAZA AND DENYING IN PART AND GRANTING IN PART DEBTORS' MOTION FOR SUMMARY JUDGMENT REGARDING DEBTORS' OBJECTION TO CLAIM OF EQUITABLE LIFE ASSURANCE SOCIETY**

JO ANN C. STEVENSON, Bankruptcy Judge.

## I. Introduction

At issue in this case is the amount of lease rejection damages recoverable by Northwest Plaza Associates ("Northwest") and Equitable Life Assurance Society of the United States ("Equitable") from Debtors Gantos, Inc. and Gantos Stores, Inc. ("Debtors"). The Debtors filed partial motions for summary judgment regarding the applicability of 11 U.S.C. § 502(b)(6) to the landlords' respective claims. Because the outcome of the motions is controlled by similar facts and laws, the Court consolidated these two matters for hearing and for purposes of issuing this opinion. FED.R.BANKR.P. 7042; FED. R.CIV.P. 42(a).

## II. Facts

Debtors own, operate, and manage specialty retail stores throughout the United States that offer women's apparel and accessories. Debtors initiated their respective reorganization cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on November 12, 1993.[1] The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this

Court. Throughout this case Debtors have continued in possession of their respective property, operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On March 7, 1995 this Court signed an order confirming Debtors' Chapter 11 plan of reorganization.

### A. Northwest's Claim for a Construction Allowance

On June 22, 1989 Debtors and Northwest entered into a lease for retail space located in St. Ann, Missouri (the "Northwest Lease" or "Lease"). Debtors rejected the Northwest Lease effective January 12, 1994 pursuant to an order of this Court. Northwest filed a proof of claim on February 1, 1994 asserting damages relating to 1) lease rejection in the amount of $260,139.45 and 2) the return of a construction allowance in the amount of $232,534.25. Debtors' partial motion for summary judgment addresses the portion of Northwest's claim seeking return of the Construction Allowance.

The Northwest Lease contains a Construction Allowance Rider, which provides in relevant part:

> If this Lease is terminated prior to the expiration of the sixth Lease Year, as a result of Tenant's default, Landlord shall have the right, in addition to all other rights and remedies of Landlord under this Lease to immediately collect the unamortized portion of such allowance ... from Tenant.

Debtors claim that because they rejected the Northwest Lease prior to the expiration of the sixth lease year, that the Construction Allowance Damages arose out of the termination of the Lease. This being the case, the determination of the damage amount is governed by 11 U.S.C. § 502(b)(6). Because the Construction Allowance does not constitute "rent reserved by such lease", Northwest cannot recover any of the Construction Allowance according to the terms of 11 U.S.C. § 502(b)(6).

---

1. Unless otherwise noted, all future statutory references are to Title 11 of the United States Code as it was enacted by the Bankruptcy Reform Act of 1978 as amended. The Bankruptcy Reform Act of 1994 is inapplicable to the Court's resolution of this matter.

Northwest filed a Cross–Motion for Summary Judgment and in Opposition to Debtors' Motion for Partial Summary Judgment ("Cross–Motion") on April 6, 1995. In its Cross–Motion, Northwest claims that the Construction Allowance is not a "termination" damage as contemplated by § 502(b)(6). Northwest argues that if the Court finds that the Construction Allowance claim is rent, it is either prepetition rent not governed by the § 502(b)(6) cap or falls within the category of "rent reserved by such lease" used in calculating the cap.

### B. Equitable's Claim for Deferred Rent and Attorneys' Fees

Debtors and Equitable entered into a lease of retail space on May 8, 1990 ("Equitable Lease" or "Lease"). The Lease was subsequently amended on September 12, 1992 and August 30, 1993. In the September 12, 1992 amendment Equitable agreed to defer Debtors' obligation to pay a portion of the fixed minimum rent for the months of July 1992 through December 1993. In consideration for this reduction, the parties agreed that the Debtors would reimburse Equitable by increasing the Fixed Minimum Rent an equivalent amount, payable over a 36–month period commencing on February 1, 2000. The September 1992 Amendment provides that:

> In the event the Lease is terminated by Landlord or Tenant, or in the event of an assignment or surrender of same, Tenant shall, upon the date of said termination or transfer, pay Landlord the remaining balance of said Deferred Rent. Said deferred rent shall be considered "additional rent" under the terms and provisions of the Lease.

Debtors rejected the Equitable Lease effective January 12, 1994. Equitable filed a proof of claim on July 19, 1994 seeking the full amount of the deferred rent as part of its nonrejection prepetition claim, and attorneys' fees as part of its postpetition claim. Debtors argue that the deferred rent is an obligation for future additional rent and that Equitable's claim exists only as a result of the rejection of the Lease. Accordingly, Equitable's claim for deferred rent must be

limited by the 11 U.S.C. § 502(b)(6) statutory cap. Debtors further argue that Equitable is not entitled to recover any of its attorneys' fees because attorneys' fees do not constitute rent reserved pursuant to § 502(b)(6).

Equitable counters that its claim for deferred rent is a prepetition claim and hence not limited by the § 502(b)(6) damage cap. Further, Equitable believes that its claim may contain attorneys fees because they were incurred as a result of Debtors' rejection of the lease, and thus are allowable pursuant to § 502(b)(6).

### III. Jurisdiction

Jurisdiction exists in this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O). Accordingly, the Court is authorized to enter a final order in this matter subject to those appeal rights provided by 28 U.S.C. § 158(a).

### IV. Analysis

Pending before the Court are two partial motions for summary judgment filed by Debtors and a cross-motion for summary judgment filed by Northwest. FED. R.BANKR.P. 7056(c) incorporates FED.R.CIV.P. 56(c) on summary judgment. To grant a motion for summary judgment, a court must examine all facts established by the record and conclude that under applicable substantive law, no reasonable fact-finder could possibly return a judgment in favor of the non-moving party. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son*, 668 F.2d 905 (6th Cir. 1982); *Boyd v. Sachs (In re Auto Specialties Mfg. Co.)*, 153 B.R. 457 (Bankr.W.D.Mich. 1993).

The parties ask this Court to determine whether the damages incurred by Northwest and Equitable are lease termination damages pursuant to 11 U.S.C. § 502(b)(6)(A) and if so, the extent to which the damage cap limits or allows their respective claims. In relevant part § 502(b)(6)(A) provides: [2]

> (a) A claim . . . is deemed allowed, unless a party in interest . . . objects.

---

**2.** This Court has previously held that the "or 15 percent" referenced in 11 U.S.C. § 502(b)(6)(A) is a function of rent, not time. See *In re Gantos, Inc.*, 176 B.R. 793 (Bankr.W.D.Mich.1995).

(b) ... if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... and shall allow such claim in such amount except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years of the remaining term of such lease ...

### A. The application of 11 U.S.C. § 502(b)(6) to the damage claim of Northwest

■ Northwest argues that the Construction Allowance is an existing prepetition claim or in the alternative, that it is rent reserved under the Northwest Lease and should be included in calculating the § 502(b)(6) cap. We believe that Northwest is incorrect on both counts.

According to the terms of the Construction Allowance, Northwest would not see a penny of the Construction allowance *unless* the Debtors defaulted. Despite Northwest's arguments to the contrary, the Construction Allowance damages were incurred due to the Debtors' termination of the Northwest lease. Therefore, the amount recoverable by Northwest must be governed by the express terms of § 502(b)(6).

■ The Court believes that Northwest cannot recover the Construction Allowance pursuant to § 502(b)(6) because it does not constitute rent reserved pursuant to the terms of the statute. Although the Bankruptcy Code does not define rent reserved, several cases have recognized that it includes items payable under a lease that are (1) expressly labeled as rent in the lease and (2) classifiable as rent because the item is regular, fixed and periodically payable in the same manner as pure rent. *In re Conston Corporation, Inc.*, 130 B.R. 449, 455 (Bankr. E.D.Pa.1991); *In re Farley, Inc.*, 146 B.R. 739, 746 (Bankr.N.D.Ill.1992). The Construction Allowance is neither specifically designated as rent nor is it a regular, fixed payment. Therefore, it does not qualify as rent reserved pursuant to 11 U.S.C. § 502(b)(6) and is not recoverable.

We were initially concerned that denying Northwest recovery of the Construction Allowance was unduly harsh. However, at the April 10, 1995 hearing, Debtors reminded the Court that the Construction Allowance was not payable at all to Northwest unless the Debtors terminated the contract. Further, Northwest still benefits by the return of its rental space.

### B. The application of 11 U.S.C. § 502(b)(6) to the damage claim of Equitable

Equitable's claim for damages involves a claim for attorneys' fees and one for deferred rent. We address the former first.

### 1. Equitable is not entitled to attorneys' fees pursuant to § 365(d)(3)

■ Equitable seeks attorneys' fees in the amount of $2,355.80 for legal services it claims were provided post-petition, but pre-rejection. Because the fees requested were incurred during this period, Equitable claims that they should be included as part of its § 365(d)(3) administrative priority claim.[3]

■ Debtors, on the other hand, assert that the attorneys' fees sought by Equitable were incurred from work done as a result of Debtors' rejection of the lease and should be treated as a prepetition claim pursuant to

---

3. In relevant part, 11 U.S.C. § 365(d)(3) provides:

"The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation ..."

Courts have interpreted "obligations" broadly enough to include assessments other than rent, such as attorneys' fees. See *In re Revco D.S., Inc.*, 109 B.R. 264 (Bankr.N.D.Ohio 1989) and *In re Narragansett Clothing Co.*, 119 B.R. 388 (Bankr.D.R.I.1990).

§ 502(g).[4] Although Equitable's attorneys' fees may be a component of Equitable's total rejection claim, fees are not "rent reserved" under § 502(b)(6)(A) and cannot be included when calculating the damage cap. *In re Storage Technology Corp.*, 77 B.R. 824, 825 (Bankr.D.Colo.1986).

The only case law the Court was able to locate allowing attorneys' fees pursuant to 11 U.S.C. § 365(d)(3) did so in situations where the Debtor assumed, not rejected, the lease in question.[5] The legislative history of § 365(d)(3) indicates that Congress intended landlords to be fully paid during the first 60 days of the case while the trustee or debtor in possession preserves the right to assume the lease. Equitable raised no allegations that the Debtors in the case at hand did *not* fully perform during that 60 day period. Even in *In re Narragansett Clothing Co.*, 119 B.R. 388 (Bankr.D.R.I.1990), a case cited by Equitable during oral argument as one permitting attorneys' fees pursuant to § 365(d)(3), the court said:

> Although the leases in question provide for the payment of interest, expenses and attorneys' fees upon default by the tenant, we are not convinced that such charges were intended to be included under § 365(d)(3), in the usual circumstance where the lessor seeks to enforce that provision pending assumption/rejection, *and, where the trustee complies.* In fact, we agree with the Trustee that the cases cited by the lessors in support of their request for such charges all involve leases that were eventually assumed by the Trustee.

*Id.* at 391 (emphasis in original).

The *Narragansett* court went on to say that despite the lack of case law, it was going to award the landlord attorneys' fees anyway

because of the debtor's continual, willful disregard for the orders of the court and the bankruptcy process. None of these extenuating circumstances is present in the Gantos bankruptcy.

Equitable has failed to meet its burden of proof on the issue of attorneys' fees. A proof of claim or interest is prima facie evidence of the validity an amount of the claim or interest. 11 U.S.C. § 502(a); FED. R.BANKR.P. 3001(f). It is allowed as filed unless a party in interest objects. 11 U.S.C. § 502(a). The Debtors filed an objection, however, that rebutted the presumption of validity. Once rebutted, Equitable has the burden of establishing the validity of its claim by a preponderance of the evidence. *Matter of Federated Dept. Stores, Inc.*, 135 B.R. 950 (Bankr.S.D.Ohio 1992). Because Equitable has failed to present relevant case law in support of its claim for attorneys' fees and has failed to specify what post-petition, pre-rejection services it provided, Equitable has failed to support its claim for attorneys' fees pursuant to 11 U.S.C. § 365(d)(3) by a preponderance of the evidence. Therefore, we deny Equitable's claim for attorneys' fees in full.

### 2. Equitable is entitled to recover the full amount of its deferred rent

In the September 12, 1992 amendment to the Equitable Lease, the Debtors and Equitable agreed to defer a portion of Debtors' Fixed Minimum Rent due between July 1992 and December 1993. Equitable now seeks to include the deferred rent amount in its prepetition damage claim. Debtors argue that the deferred amount did not accrue in the prepetition period and that but for the Lease rejection, would not be

---

4. Section 502(g) provides as follows:

"A claim arising from the rejection, under section 365 of this title or under a plan under chapter 9, 11, 12, or 13 of this title, of an executory contract or unexpired lease of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition."

5. In relevant part, § 365(d)(3) states:

"The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title ... Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title."

owing until February, 2000. Therefore, the claim for Deferred Rent emanates from the termination of the Lease and is limited by the § 502(b)(6) damage cap.

### a. The *Vause* decision

Despite Debtors' arguments to the contrary, the Court believes that resolution of this issue is governed by *In re Vause,* 886 F.2d 794 (6th Cir.1989). In *Vause,* the Sixth Circuit held that 361 days of rent was "due" under a farm lease which required annual rent be paid in arrears at the time the debtors filed their bankruptcy petition, even when the petition was filed four days prior to the annual payment date. After the debtors rejected the lease, the landlords had a claim for prepetition rent.

Writing for the court, Judge Cornelia Kennedy acknowledged that the term "due" within the meaning of § 502(b)(6) is not defined in the Bankruptcy Code, and has two possible meanings. "It is sometimes used to express the mere state of indebtment, and then is an equivalent to owed, or owing; and it is sometimes used to express the fact that the debt has become payable." *Vause,* 886 F.2d at 799, quoting *United States v. State Bank of North Carolina,* 31 U.S. (6 Pet.) 29, 36, 8 L.Ed. 308 (1832). The question in *Vause,* as here, is whether Congress intended to give lessors damages for unpaid rent "owing" under the lease, or matured and "payable" under the lease.

Relying primarily on legislative history and principles of equity, the Sixth Circuit concluded that "due" within the meaning of § 502(b)(6) means "owing". The court looked at the evolution of the statute through the Bankruptcy Reform Act of 1978 to determine that Congress has extended lessors rights over time, providing for a limited sacrifice of past actual damages and limited future damages, in an attempt to compensate the landlord for his loss while balancing the rights of other creditors and the debtor. *Vause,* 886 F.2d at 803. This trend of expanding the rights of the landlord in order to strike a balance between the parties led the court to conclude that the fortuity of the filing date should not provide the debtor with a windfall.

Finally, the *Vause* court looked at equitable considerations to reach its decision that "due" means "owing" in order to prevent the debtors, who had the used the land for 361 days, from receiving a windfall based on the fortuity of the filing date.

### b. Equitable's deferred rent is a prepetition claim not subject to the § 502(b)(6)(A) cap

Applying *Vause* to the case at hand, we believe that the $188,154.17 of deferred rent at issue was "owing" during the months of July 1992 through December, 1993. The Court rejects Debtors' argument that *Vause* is inapplicable because it deals with rent payable in arrears whereas the Debtors in this case pay their rent in advance. We believe that the *Vause* analysis is not contingent upon whether the rent is paid in arrears or is deferred. Rather, it provides an analysis for when rent is "due" in either situation.

█ The Court also rejects Debtors' argument that the deferred rent amount is not a prepetition obligation because the September 1992 Lease amendment provides that the deferred rent shall be "additional rent" under the terms and provisions of the Lease. Debtors interpret this language as meaning that the rent is a prospective obligation and hence not due and owing between July 1992 and December 1993. This being the case, the deferred rent amount is not owed until February, 2000 and Equitable's $188,154.17 deferred rent claim arises out of the Lease termination and must be limited by § 502(b)(6)(A).

This interpretation contradicts the holding in *Vause.* The September 1992 Lease amendment's description of deferred rent as "additional rent" does not change the fact that the $188,154.17 was due and owing between July 1992 and December 1993. The Court agrees with Equitable in concluding that properly read, the September 1992 Lease Amendment was simply a concession by Equitable to temporarily forego receipt of a portion of the Fixed Minimum Rent that was accruing between the relevant months and to instead collect that rent at a later period. This being the intent of the parties and *Vause* being the relevant, controlling

case law, the Court holds that the deferred rental amount was due and owing between July 1992 and December 1993, and hence is a pre-petition claim not subject to the 11 U.S.C. § 502(b)(6) cap.[6]

### V. Conclusion

For the reasons stated above, the Court denies Northwest's claim for return of the $232,534.25 Construction Allowance. Further, we deny Equitable's claim for attorneys' fees under 11 U.S.C. § 365(d)(3), but pursuant to the *Vause* decision, allow Equitable's claim for deferred rent as a prepetition claim in the amount of $171,634.78.

6. We note that the portion of the $188,154.17 attributable to the rental period after the November 12, 1993 petition date—approximately $16,-519.39—should properly be allocated as a post-petition claim pursuant to *Vause*. Equitable's Amended Proof of Claim should be adjusted accordingly.