**In re ORVCO, INC., Debtor.**

**GREAT WESTERN SAVINGS BANK, Appellant,**

v.

**ORVCO, INC., Appellee.**

**BAP No. WW–87–1984 JAsMo.**

**Bankruptcy No. 87–03895.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 19, 1988.

Decided Feb. 22, 1989.

John D. Reagh III, Seattle, Wash., for appellant.

Gloria Nagler, Woodley & Thurston, Kirkland, Wash., for appellee.

## OPINION

Before JONES, ASHLAND and MOOREMAN, Bankruptcy Judges.

JONES, Bankruptcy Judge:

### FACTS

On February 28, 1985, Orville and Victoria Cohen ("the Cohens") executed a promissory note in the amount of $809,000 in favor of the Appellant, Great Western Savings Bank ("Great Western"). The note is secured by a deed of trust on real property located in Seattle, Washington, known as the Century Building. As additional security for the loan, the Cohens granted Great Western an assignment of rents. The assignment of rents covered a lease dated January 1, 1985, pursuant to which Century Construction Company ("Century"), a "division of" the Debtor, Orvco, Inc. ("Orvco"), agreed to lease the Century Building from the Cohens. Pursuant to the lease, Century is obligated to make monthly rental payments of $9,167. Orvco is not a party to the lease.

The Cohens defaulted in their payments to Great Western in March, 1987. On May 13, 1987, Great Western commenced an action to foreclose on its deed of trust. On May 18, 1987, Orvco filed a petition under Chapter 11 of the Bankruptcy Code. The Cohens and Century also filed petitions on the same date.[1] Neither Orvco nor Century moved to assume the subject lease within 60 days of their bankruptcy filings. Therefore, the lease has been deemed re-

---

1. The Cohens filed a Chapter 11 petition. Century filed a petition under Chapter 7 of the Bankruptcy Code.

jected by operation of 11 U.S.C. section 365(d)(4).

On July 6, 1987, prior to the deemed rejection of the lease, Great Western filed a Motion for Performance of Lease Obligations and Adequate Protection in the Orvco bankruptcy. The motion was heard on July 17, 1986. Great Western argued that because Century held itself out to be a "division of" Orvco, Great Western had looked to Orvco in assessing Century's creditworthiness and, therefore, Orvco should be held liable on the lease. Great Western also alleged that it had exercised the assignment of rents clause by notifying Orvco in April, 1987 of the Cohens' default under the note. Great Western further argued that pursuant to 11 U.S.C. section 365(d)(3) it was entitled to the timely performance of the full lease obligations for the sixty days following the order for relief, notwithstanding the actual use of the property.

In opposition, Orvco argued that it was not a party to the lease. Orvco further argued that Century is not a "division of" Orvco, but a wholly owned subsidiary and, therefore, an entirely separate entity. Finally, Orvco argued that Great Western had failed to exercise its assignment of rents.

The bankruptcy court denied Great Western's motion based on its interpretation of section 365(d)(3), and never reached the underlying issue of Orvco's liability on the lease. The court held that section 365(d)(3) cannot be read to require the estate to timely perform the obligations of a lease before a trustee is appointed and given an opportunity to review the terms of the lease. The court also held that section 365(d)(3) does not automatically characterize claims during the sixty-day period as administrative claims; rather, only claims for actual use should be deemed administrative claims. Finally, the court noted that the evidence before it suggested that Century and Orvco conducted little, if any, business from the subject premises, and reserved the issue of reimbursement for actual use for a later hearing.

Great Western filed a motion for reconsideration which was also denied. Great Western timely appealed.

## STANDARD OF REVIEW

■ Resolution of this appeal requires the Panel to interpret the provisions of 11 U.S.C. section 365(d)(3). Questions of statutory interpretation are reviewed de novo. *Trustees of the Amalgamated Ins. Fund v. Geltman Ind., Inc.*, 784 F.2d 926, 929 (9th Cir.1986).

## DISCUSSION

a. *The amount of Great Western's claim.*

■ On appeal, Great Western argues that the bankruptcy court erred because section 365(d)(3) requires a debtor to pay the full lease amount for the 60 days following the order for relief, regardless of whether the lease has already been deemed rejected. We disagree. Section 365(d)(3) provides in relevant part:

(3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60 day period.

11 U.S.C. section 365(d)(3). Section 365(d)(3) was added to the Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Although the 1984 amendments to section 365 are frequently referred to as the "shopping center amendments", the language of section 365 simply refers to "nonresidential real property." Thus, section 365(d)(3) is applicable to business premises generally. *See In re O.P. Held, Inc.*, 77 B.R. 388, 389 (Bankr.N.D.N.Y.1987).

The legislative history to the section provides:

> [The second] problem is that *during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease,* the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position....
>
> The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch) (emphasis added).

Prior to the 1984 amendments, the law was clear that "until assumption or rejection of the debtor's lease, the estate is liable only for the reasonable value of the use and occupancy of the premises." *See* 2 L. King. *Collier on Bankruptcy,* para. 365.03[3] at 365–32 (15th Ed.1987). In interpreting the effect of the 1984 amendments, several courts have held that current section 365(d)(3) requires the continued performance by the debtor of the full rent obligations under the lease for the 60–day period following the order for relief, even where the lease is ultimately rejected, notwithstanding the fair market value of the leased premises or the extent of the debtor's occupancy. *See, e.g., In re National Oil Co.,* 80 B.R. 525, 527 (Bankr. D.Colo.1987) (rejecting argument that amount due should be based upon fair market value of lease and not the lease amount); *In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879 (Bankr.E.D.N.Y. 1986) (granting full lease amount as administrative claim even though debtor only occupied 10 percent of leased premises).

We disagree with the conclusion reached by these cases to the extent they declare an administrative status or super-priority status for such claims. In our view, section 365(d)(3) is not determinative in a situation where a lease has been deemed rejected. As noted by one commentator:

> An issue not squarely addressed by the amendments to section 365(d) arises in cases in which the debtor does not timely perform its obligations under a nonresidential property lease and neither assumes or rejects the lease within 60 days of the order for relief. In such a case, one issue is whether the lessor is entitled by section 365(d) to an administrative priority claim for the full contractual rent for the 60 days or whether the lessor must establish its claim for reasonable administrative rent under section 503(b)(1)(A) for the debtor's use of property.

3 L. King, *Collier on Bankruptcy,* para. 503.04[ii] at p. 503–27, n. 22 (15th Ed.1987). Section 365(d)(3) provides that the trustee "shall" timely perform the obligations of the debtor, and upon motion of the lessor, the court shall order full rental payments pending assumption or rejection. If the debtor is unwilling or unable to pay, however, section 365(d)(3) "does not expressly state what consequences follow from a ... violation of its terms." *In re Southwest Aircraft Services, Inc.,* 831 F.2d 848, 853 (9th Cir.1987). In *Southwest Aircraft* the Ninth Circuit stated:

> We believe that Congress intended the bankruptcy courts to have the discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of subsection (d)(3) should be forfeiture of the assumed lease, some other penalty, or no penalty at all.

*Id.,* 831 F.2d at 854. Under this section, a bankruptcy court has the discretion to order the immediate surrender of the leased premises if a debtor fails to make the required payments. However, once a lease is

deemed rejected, the language of the section does not attempt to determine the administrative claim status of the rent obligation. Nothing in the language of the section requires administrative or, worse yet, super-administrative status. In our view, the language of 365(d)(3), "notwithstanding section 503(b)(1)", means that notwithstanding the administrative or non-administrative status of a claim by a lessor, a bankruptcy court must order its payment pending assumption or rejection. It does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under section 503(b)(1)(A) has been completely abrogated. Accordingly, we hold that when a lease is deemed rejected, a lessor must establish its claim for administrative status under section 503(b)(1)(A), the specific section governing such status.

b. *The right to immediate payment.*

■ Great Western next argues that because section 365(d)(3) requires that the trustee "timely" perform the obligations of the debtor, it is entitled to immediate payment of its claim, without regard to the amount owing other administrative claimants. In other words, Great Western seeks a super-administrative status for its claim. We don't believe the statute supports such a reading.

Although section 365(d)(3) calls for "timely" performance of the debtor's lease obligations, there is no indication that Congress intended to grant landlords some type of super-priority status. Accordingly, most courts addressing the issue have held that where there are insufficient funds in the estate to satisfy all administrative claims, a landlord is only entitled to its pro rata share with the other allowed administrative claimants. *See In re United West, Inc.,* 87 B.R. 138 (Bankr.D.Nev.1988); *In re Dieckhaus Stationers of King of Prussia, Inc.,* 73 B.R. 969, 973 (Bankr.E.D.Pa. 1987); *In re Tandem Group Inc.,* 61 B.R. 738, 742 (Bankr.C.D.Cal.1986). *But see In re Rare Coin Galleries of America,* 72 B.R. 415, 416 (D.C.Mass.1987). "Had Congress intended to create a super-priority for subsection 365(d)(3) it would have done so by express statutory language." *Tandem,* 61 B.R. at 742. In the absence of such language, we hold that after rejection of the lease, the payment of an administrative claim for rent, like all other administrative claims is within the sound discretion of the bankruptcy court and should be determined under section 503. *See In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988) (emphasizing maximization of the estate and section 503 standards for determining administrative status).

■ However, we agree with the *Dieckhaus* court that:

> The enactment of section 365(d)(3) reflects a policy choice comparable to that of section 331. Congress clearly envisioned that debtor-tenants would 'pay their rent, common area, and other charges on *time* pending the trustee's assumption or rejection of the lease.' In light of this strong expression of legislative intent, I must conclude that a non-residential lessor's administrative expense claim arising under section 365(d)(3) should be paid immediately unless the trustee establishes good cause for withholding the payment.

73 B.R. at 973 (citations omitted) (emphasis in original). Because the record indicates that there may not be sufficient funds in the estate to pay all administrative claimants in full, the bankruptcy court did not err in deferring payment on Great Western's claim pending a determination of the amount of the claim and the ability of the Debtor to pay all administrative claimants.

For the foregoing reasons, we AFFIRM the decision of the bankruptcy court.