**In re DAISY/CADNETIX INC., a Colorado corporation,**

**and**

**Daisy Systems Corporation, a Delaware corporation, Debtors.**

**Bankruptcy Nos. 5–90–03535–JRG, 5–90–03534–JRG and 91–6204103Z.**

United States Bankruptcy Court, N.D. California.

May 30, 1990.

Bruce Spector, Los Angeles, Cal., for debtors.

Garrett L. Cecchini, San Francisco, Cal., for Chapter 11 trustee.

Elize M. Brown, Los Angeles, Cal., for official unsecured creditors' committee.

Bernard S. Greenfield and Marcia E. Gerston, San Jose, Cal., for John Arrillaga and Richard T. Peery.

## OPINION

JAMES R. GRUBE, Bankruptcy Judge.

### I. INTRODUCTION.

Before this Court is an objection by the Chapter 11 Trustee ("Trustee") to the administrative claim of John Arrillaga and Richard Peery ("Lessors"), lessors of real property to Debtors Daisy Cadnetix Inc. and Daisy Systems Corporation ("Daisy"). The Official Unsecured Creditors' Committee ("Committee") joins in the objection. For the reasons hereinafter stated, the objections of the Trustee and the Committee are sustained.

### II. BACKGROUND.

On November 22, 1985, Daisy entered into a commercial lease with the Lessors. Daisy vacated the premises on April 1, 1990, prior to the expiration of the lease term. Daisy's creditors filed an involuntary bankruptcy petition on May 30, 1990. Daisy consented to an Order For Relief under Chapter 11 on July 30, 1990, and Jack S. Kenney was appointed Chapter 11 Trustee on July 31, 1990. On August 28, 1990, the Trustee filed a motion to reject certain real property leases, including the subject lease. The Court authorized the rejection of the lease on September 26, 1990. On the same date, the Lessors filed an administrative expense priority claim in the amount of $444,117.04 for the rent accruing between July 30, 1990, the date of the Order for Relief, and August 28, 1990, the date of the Trustee's motion to reject the lease. The Lessors' claim is based on the judicial doctrine that 11 U.S.C. § 365(d)(3) provides for the immediate payment by the trustee of all contractual postpetition, pre-rejection rent on nonresidential real property as it comes due, irrespective of the standards of section 503(b)(1)(A). The Trustee objects to the claim of the Lessors on the basis that the requirements of section 503(b)(1)(A) must be met before a claim may be allowed as a section 365(d)(3) claim. The Trustee therefore contends that the Lessors' claim should be disallowed in toto, since there has been no "actual" cost of preserving the estate owed to the Lessors, as there was no actual use of the premises by Daisy during the time in question.

### III. DISCUSSION.

Section 503(b)(1)(A) provides in pertinent part:

"[T]here shall be allowed administrative expenses ... including—the actual, necessary costs and expenses of preserving the estate...."

Section 365(d)(3) provides in pertinent part:

"The trustee shall timely perform all obligations of the debtor ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title."

The Trustee's objection to the claim of the Lessors presents two separate issues to the Court. The first issue is whether a section 365(d)(3) claim must meet the "actual and necessary" standard of section 503(b)(1)(A) before it may be allowed; the second issue is whether a section 365(d)(3) claim for post-petition rent should be paid by the Trustee as soon as the rent becomes due, giving that claim de facto "superpriority" over other administrative claims. The courts are divided on both of these issues.

The Trustee relies primarily on the holding of In re Orvco, Inc., 95 B.R. 724 (9th Cir. BAP 1989), in support of the argument that section 503(b)(1)(A) must be satisfied before a landlord may recover under section 365(d)(3). The Orvco court cited 3 L. King, Collier on Bankruptcy, ¶ 503.04[ii] at pp. 503–27, n. 22 (15th ed. 1987) for the proposition that it is an open question whether sections 365(d)(3) and 503(b)(1)(A) should be read in conjunction with each other:

"An issue not squarely addressed by the amendments to section 365(d) arises in cases in which the debtor does not timely perform its obligations under a nonresidential property lease and neither assumes or rejects the lease within 60 days of the order for relief. In such a case, one issue is whether the lessor is entitled by section 365(d) to an administrative

priority claim for the full contractual rent for the 60 days or whether the lessor must establish its claim for reasonable administrative rent under section 503(b)(1)(A) for the debtor's use of property."

*Orvco,* 95 B.R. at 727.

The *Orvco* court then went on to espouse the latter view:

"Nothing in the language of [section 365(d)(3)] requires administrative, or, worse yet, super-administrative status. In our view, the language of 365(d)(3), 'notwithstanding section 503(b)(1)' means that notwithstanding the administrative or non-administrative status of a claim by a lessor, a bankruptcy court must order its payment pending assumption or rejection. It does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under section 503(b)(1)(A) has been completely abrogated. Accordingly, we hold that when a lease is deemed rejected, a lessor must establish its claim for administrative status under section 503(b)(1)(A), the specific section governing such status."

*Id.* at 728.

As to the issue of whether a section 365(d)(3) claim should be paid by the trustee as soon as the rent becomes due, ahead of other administrative claims, the *Orvco* court held: "Although section 365(d)(3) calls for 'timely' performance of the debtor's lease obligations, there is no indication that Congress intended to grant landlords some type of super-priority status." *Id.*

In further support of his position the Trustee has cited *In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988); *In re Southwest Aircraft Services, Inc.,* 831 F.2d 848 (9th Cir.1987), *cert. denied, Long Beach v. Southwest Aircraft Services, Inc.,* 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988); *In re Thompson,* 788 F.2d 560 (9th Cir.1986); *In re Tammey Jewels, Inc.,* 116 B.R. 290 (Bankr.M.D.Fla. 1990); and *In re Patella,* 102 B.R. 223 (Bankr.D.N.M.1989). The Ninth Circuit authority cited by the Trustee does not directly address the precise issues presented in

this case; *Tammey Jewels* and *Patella* are decisions of bankruptcy courts in other jurisdictions that have explicitly adopted the holding of *Orvco.*

The Lessors rely on the opposing line of bankruptcy cases in support of their position, citing *In re Cardinal Industries, Inc.,* 109 B.R. 738 (Bankr.S.D.Ohio 1989); *In re Western Monetary Consultants,* 100 B.R. 545 (Bankr.D.Colo.1989); *In re Gillis,* 92 B.R. 461 (Bankr.D.Hawaii 1988); *In re Granada, Inc.,* 88 B.R. 369 (Bankr.D.Utah 1988); *In re National Oil, Inc.,* 80 B.R. 525 (Bankr.D.Colo.1987); *In re TDC Development Corp.,* 73 B.R. 135 (Bankr.N.D. Tex.1987); *In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879 (Bankr.E.D.N.Y. 1986); *In re Tandem Group, Inc.,* 61 B.R. 738 (Bankr.C.D.Cal.1986); and *In re M.H.I., Inc.,* 61 B.R. 69 (Bankr.D.Md.1986). Of this group of cases, the Court notes that only *Gillis* and *Tandem Group* were decided by courts within the jurisdiction of the Ninth Circuit. The Court further notes that the *Tandem Group* case was cited with approval by the Bankruptcy Appellate Panel in *Orvco* with reference to the issue of immediate payment of a section 365(d)(3) claim:

"This court has found no evidence that Congress intended a super-priority for subsection 365(d)(3) expenses.... Had Congress intended to create a super-priority for subsection 365(d)(3) it would have done so by express statutory language."

*Orvco,* 95 B.R. at 728, citing *Tandem Group,* 61 B.R. at 742.

As previously stated, the Ninth Circuit authority cited by the Trustee does not precisely address the issues presented in this case. However, the Court concludes that the result of *Orvco* is correctly derived from a series of Ninth Circuit decisions commencing with *In re Cochise College Park, Inc.,* 703 F.2d 1339 (9th Cir.1983) and culminating in *In re Dant & Russell, Inc.,* 853 F.2d 700 (9th Cir.1988).

In *In re Cochise,* a case decided before the 1984 amendments to the Bankruptcy Code were enacted, the court briefly discussed the state of the law at that time

vis-a-vis the valuation of a landlord's administrative expense claim for rent during the period between the filing of the bankruptcy petition and the assumption of the lease. The court stated that such a claim was not necessarily valued according to the terms of the lease, but objectively under the "reasonable worth" standard. *In re Cochise College Park, Inc.*, 703 F.2d at 1354.

*In re Thompson*, 788 F.2d 560 (9th Cir. 1986), was decided after the 1984 amendments; as the Lessors accurately observed in their brief, *Thompson* was a case concerning personal property leases, and the court did not discuss the interface between sections 365(d)(3) and 503(b)(1)(A). However, it is significant that, despite the passage of the 1984 amendments in the interim, the *Thompson* court referred to the "reasonable worth" standard of *In re Cochise*, analogizing to the personal property lease context the principle that the bankruptcy estate is liable only for the reasonable value of the use and occupancy of leased premises in the real property lease context. *In re Thompson*, 788 F.2d at 563, citing *In re Cochise*, 703 F.2d at 1354 n. 17.

The following year, in *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848 (9th Cir.1987), *cert. denied, Long Beach v. Southwest Aircraft Services, Inc.*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988), the court held that the bankruptcy courts have a certain degree of latitude in determining whether the estate should be penalized in a situation where the trustee has failed to immediately perform the obligations of the debtor. The court stated:

"We believe that Congress intended the bankruptcy courts to have the discretion to consider all of the particular facts and circumstances involved in each bankruptcy case and to decide whether the consequence of a violation of subsection (d)(3) should be forfeiture of the unassumed

lease, some other penalty, or no penalty at all."

*Id.* at 854.

The court's observation is borne out in 2 L.King, *Collier on Bankruptcy*, ¶ 365.03[3], p. 365–33 (15th ed. 1990):

"[Section] 365(d)(3) ] is silent as to the consequences of a failure to perform.... While the genesis of section 365(d)(3) was an understandable impatience with trustees' delays in curing defaults and failure to preserve the status quo by making interim payments, the result is somewhat unrealistic in major cases, particularly those under chapter 11. The meaning of section 365(d)(3) will ultimately be developed on a case by case basis."

Finally, in *In re Dant & Russell, Inc.*, 853 F.2d 700 (9th Cir.1988), a case involving a post-petition lease, the court discussed the standard of section 503(b)(1)(A) at length. The court indicated that the trustee is only liable for the fair and reasonable value of actual use of leased premises under that Code section in the context of post-petition leases. Although the issue of the interrelation of sections 365(d)(3) and 503(b)(1)(A) was not directly before the court, it is noteworthy that the court cited *In re Thompson* and *In re Cochise* with approval. *Id.* at 707.[1] This Court therefore concludes that the *Orvco* decision is consistent with the evolving direction of the case law of the Ninth Circuit; that is, it appears that the court would not allow an automatic administrative claim by a lessor for full contractual rent irrespective of the "actual and necessary" standard of section 503(b)(1)(A).

### IV. CONCLUSION.

The Court hereby adopts the holding of *Orvco* that the bankruptcy estate is liable only for the actual and necessary value of nonresidential leased premises prior to assumption or rejection of the lease, rather than for the full contractual amount of the rent as set by the lease. The Court bases

---

1. "The amount of the administrative expense claim is limited to the 'portion of the leased property' that is actually used or occupied. *Thompson*, 788 F.2d at 564. The amount of the administrative expense claim is not valued according to the lease term, but under an objective worth standard that measures the fair and reasonable value of the lease. *Id.* at 563; *Cochise*, 703 F.2d at 1354 n. 17...."

its decision on a synthesis of the holdings of related Ninth Circuit cases, as previously discussed.

It is the Court's view that section 365(d)(3) requires debtors to act promptly and responsibly toward landlords. If a debtor wants to avail itself of the continued use of the leased premises it must perform the terms and conditions of the lease. If a debtor does not intend to retain possession of the premises it should move promptly to reject the lease, as was done in this case.

As to the issue of the value of the Lessors' claim, the Court will hold a further hearing for the limited purpose of determining if Daisy's contingent right to assume the lease during the time in question provided any actual value to the bankruptcy estate. The Lessors have not presented any evidence to the Court on this issue, since they have adhered to the position that they were owed the full amount of contractual rent. The Trustee contends that nothing is owed the Lessors, given the fact that Daisy vacated the premises long before the bankruptcy petition was filed.

█ If it is determined upon further hearing that the Lessors are owed an administrative claim, the Court will consider that claim to have the same status as all other Chapter 11 administrative claims. The Court agrees with the *Orvco* court that a de facto "superpriority" should not be created absent an explicit provision in the Bankruptcy Code.[2]

Based on the foregoing, the objections to the claim of the Lessors brought by the Trustee and the Committee are hereby sustained pending a future determination of the value, if any, of the Lessors' claim.

---

2. The Court finds further support for this result in the case of *In re Peaches Records and Tapes, Inc.,* 102 B.R. 193 (9th Cir.BAP 1989), a case involving a purported section 507(b) super-priority. The court stated:

"'[B]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among [its] creditors, *statutory priorities are narrowly construed'....* '[I]f one claimant is to be preferred over others, the purpose should be clear from the statute (emphasis in original, citations omitted).'"