**In re DUTCH INNS OF AMERICA, INC. d/b/a Georgetown Dutch Inn, Debtor.**

**Bankruptcy No. 90–00524.**

United States Bankruptcy Court, District of Columbia.

Jan. 30, 1991.

Dennis F. Nee, Sanders, Nee & Libby, Washington, D.C., for debtor.

Jeffrey M. Sherman, Shaw, Pittman, Potts & Towbridge, Washington, D.C., for movant.

### DECISION RE TURNOVER OF PART OF ESCROWED FUNDS AND DEFERRING RULING AS TO BALANCE

S. MARTIN TEEL, Jr., Bankruptcy Judge.

The court has under consideration the Motion to Compel Turnover of Escrowed Funds ("Motion"), filed by Asher L. and Naoma Wheeler (collectively referred to as the landlord). For the reasons stated at a hearing of January 25, 1991, the court found that the escrow fund established pursuant to this court's Order Granting and Conditioning Extension of Time was created for the benefit of the landlord and is a source for payment of the landlord's percentage rent claims. The parties stipulated that for the post-petition period through November 15, 1990, the landlord is owed at least $69,491 in percentage rent pursuant to the lease with the debtor. The lease was rejected by an order of January 14, 1991, reflecting a decision made in open court on January 11, 1991. The court further concluded that, pursuant to 11 U.S.C. § 365(d)(3), the post-petition percentage rent concededly owed through November 15, 1990, as a date preceding the date of rejection of the lease, must be paid from the escrow. The court will hold a further hearing to determine the landlord's claim of entitlement to an amount of percentage rent greater than $69,491.[1]

The cases cited by the debtor as holding that fair market value is the measure of rent the landlord may collect do not deal with § 365(d)(3) as amended in 1984. *See, e.g., In re Thompson,* 788 F.2d 560 (9th Cir.1986) (1983 bankruptcy case). The landlord's entitlement to an administrative claim for post-petition, pre-rejection rent for nonresidential real property has been held to be measured by the terms of the lease by virtue of § 365(d)(3). *In re Homeowner's Outlet Mall Exchange, Inc.,* 89

---

1. The debtor-in-possession defended against the motion on the eve of conversion of the case to Chapter 7. The court will stay its order for turnover to permit the Chapter 7 trustee to seek reconsideration if he wishes to present grounds or argument not previously raised.

B.R. 965 (Bankr.S.D.Fla.1988); *In re Granada, Inc.*, 88 B.R. 369, 374 n. 6 (Bankr.D. Utah 1988); *In re M.H.I., Inc.*, 61 B.R. 69 (Bankr.D.Md.1986). *Contra, In re Orvco, Inc.*, 95 B.R. 724 (9th Cir. BAP 1989); *In re Tammey Jewels, Inc.*, 116 B.R. 292 (Bankr. M.D.Fla.1990).

The issue is academic here because the escrow carved funds away from the estate to assure that the percentage rent obligation would be met. The claim against the escrow need not be sought by way of a § 503 application for administrative expenses. Rather, the payment may be allowed pursuant to the terms of the escrow. That is to say, any possible conflict between § 365(d)(3) and § 503(b)(1)(A) need not be reached because (1) the escrowed funds necessary to pay the landlord's claim are not property of the estate and (2) the terms of the escrow allow payment pursuant to the terms of the lease, as opposed to pursuant to any administrative claim allowed.

The debtor argues unpersuasively that the escrow was merely meant to assure that sufficient funds were on hand to equal any percentage rent obligation, not to remove the funds from the estate. The escrow was required by the court as a condition of the debtor's receiving a fairly lengthy extension of the time to assume the lease. Although the order did not spell out the terms upon which the escrow was to be released, the surrounding circumstances demonstrate that the escrow was intended to carve out the funds for eventual payment of post-petition, pre-rejection percentage rent. The debtor already had been reserving an amount for that purpose. If the court would have been satisfied with a mere reserve, against which the landlord would claim with other Chapter 11 administrative claims on a pro rata basis, it could have left the reserve system in place. As the transcript of the hearing on the motion to extend reveals, the escrow was established to assure that the funds were "earmarked" for the landlord's percentage rent claims. Although the percentage rent would not be due until the end of the year, the court ordered that a sum be set aside to assure its availability for the landlord once

it came due. The court required escrow, not payment, of the percentage rent to the landlord so that the debtor would be able to invest the escrowed money until the percentage rent came due. The escrow contemplated payment of percentage rent rather than of whatever administrative claim the landlord might have: no mention was ever made of assuring payment of any administrative claim the landlord might have.

If the court had directed nothing more than that the debtor-in-possession retain on hand sufficient funds to pay the percentage rent, the landlord would have no greater claim against the funds than it already had under the lease. But the court instead ordered an escrow, which altered the status quo. Arguably, the estate's *legal* ownership of the funds was not altered by the escrow. *In re O.P.M. Leasing Services, Inc.*, 46 B.R. 661, 667 (Bankr.S.D.N.Y. 1985). But *equitable* ownership was changed. *Id.* at 667–68. That is to say, the right to receive or use the funds was altered by the terms of the escrow. An escrow before bankruptcy would have removed such equitable ownership of the funds from the estate. *Creative Data Forms, Inc. v. Pennsylvania Minority Business Development Authority*, 72 B.R. 619, 623 (E.D.Pa.1985), *aff'd*, 800 F.2d 1132 (3rd Cir.1986); *In re Newcomb*, 744 F.2d 621 (8th Cir.1984); *In re Coco*, 67 B.R. 365, 369 (Bankr.S.D.N.Y.1986).

Section 365(d)(3) would have permitted payment of the percentage rent coming due after bankruptcy and before rejection of the lease. Nothing in the Bankruptcy Code proscribed a step short of that, *i.e.*, the establishment of an escrow to assure payment. Once the escrow in this case was established and funded in accordance with the court's order, the equitable ownership of the funds, to the extent necessary to pay percentage rent, ceased to be in the estate just as surely as though the escrow had been established and funded before the bankruptcy commenced.

There are numerous cases holding that § 365(d)(3) does not establish a superpriority under § 503 for a landlord's administra-

tive rent claim. *E.g., Orvco,* 95 B.R. at 728. The landlord has no need to quibble with those decisions. Whether a superpriority is established is simply beside the point. The landlord here defended against a motion for an extension of the time to assume the lease on the basis that there was no assurance that the percentage rent accruing would be paid once due. The court conditioned the grant of an extension on the establishment of an escrow assuring that funds would be on hand to pay the percentage rent. The creation of the escrow removed from the estate the funds necessary to pay percentage rent. The landlord has no need for a superpriority administrative claim because it is claiming the percentage rent from the escrow, not from the estate.