**In re WORTHS STORES CORP. d/b/a N–E–T Works, N–E–T Works II Network and Worths, Debtor.**

**Bankruptcy No. 91–42276–BKC–399.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Dec. 3, 1991.

John Collen, David B. Schwartz, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for Homart Development Corp.

Karen W. Fries, Lloyd A. Palans, Carl J. Spector, St. Louis, Mo., for debtor.

Neil Weintraub, St. Louis, Mo., Office of U.S. Trustee.

Lawrence Gottlieb, Siegel, Sommers & Schwartz, New York City, for Barry Sharon.

Joel A. Kunin, Steven M. Wallace, Carr, Korein, Tellery, Kunin, Montroy, Glass & Bogard, St. Louis, Mo., for creditors committee.

Henry F. Luepke, Jr., Larry E. Parres, Joseph J. Trad, Lewis, Rice & Fingersh, St. Louis, Mo., for Boatman's National Bank of St. Louis.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

## INTRODUCTION

In this case the Court must determine whether a nonresidential real property lessor is entitled to an administrative priority expense under § 365(d)(3) for post-petition lease payments pending assumption or rejection of the lease or whether the lessor must establish his entitlement to administrative expense priority under § 503(b)(1)(A).

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(A).

## FACTS

This matter is before the Court on the motion Worths Stores Corp. (the "Debtor") to reconsider this Court's Order of October 4, 1991, directing Debtor to immediately pay administrative expenses to Homart Development Corp. ("Homart"). Homart is the lessor of various properties leased by Worths Stores Corp. (the "Debtor") in operating its retail clothing business.

Debtor commenced this case on April 9, 1991, by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. § 101 et seq.) (the "Code"). One day before filing its petition, Debtor vacated each of the premises leased from Homart. On the petition date, Debtor filed a motion to reject these leases. This Court entered an order approving rejection of the leases on May 24, 1991, and entered an order holding that the effective date of rejection was May 24, 1991. *In re Worths Stores Corp.*, 130 B.R. 531 (Bankr.E.D.Mo.1991). Immediately following this Court's ruling on the effective date of rejection, Homart filed a Motion seeking payment of $28,749.54 in post-petition/pre-rejection rent obligations and attorney fees pursuant to § 365(d)(3). The Court granted Homart's motion and or-

dered Debtor to immediately pay Homart its administrative expenses in the amount of $28,749.54 [1].

In support of its motion to reconsider the order directing immediate payment of administrative expenses, the Debtor asserts that this Court improperly awarded Homart an administrative expense because Homart did not demonstrate that use of the premises was an "actual" and "necessary" expense of preserving the bankruptcy estate pursuant to § 503(b)(1)(A). Homart, conversely, argues that a lessor need not meet the requirements of § 503(b)(1)(A) in order to establish the right to an administrative expense for post-petition/pre-rejection lease payments under § 365(d)(3).

## ISSUE

The issue before the Court is whether a nonresidential real property lessor is entitled to administrative expense priority for post-petition/pre-rejection lease payments under § 365(d)(3), or whether the lessor must meet the requirements of § 503(b)(1)(A) in order to establish an administrative expense priority.

## DISCUSSION

Section 365(d)(3) of the Code provides in relevant part that:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title.* The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period ... (emphasis added)

Section 503(b)(1)(A) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
>> (1)(A) the *actual, necessary costs and expenses of preserving the estate,* including wages, salaries, or commissions for services rendered after the commencement of the case; (emphasis added)

Two lines of cases have developed in interpreting these Code sections with respect to post-petition nonresidential real property lease obligations. The majority of courts appear to hold that § 365(d)(3) gives a lessor an administrative expense for lease obligations arising after the date of filing but before the earlier of the expiration of 60 days from filing or the actual date of assumption or rejection of the lease. This line of cases reads § 365(d)(3) as containing an unambiguous statement of Congressional intent that lessors of nonresidential realty receive the rent provided for in the lease until the lease is rejected. *In re Laurence R. Smith Inc.,* 127 B.R. 715, 716 (Bankr. D.Conn.1991) (citing numerous cases in support of this reading). A review of the legislative history for § 365(d)(3) supports the majority's position.

Prior to the 1984 amendments to § 365(d)(3), a landlord's claim for post-petition rent was limited to the estate's liability for the reasonable value of the use and occupancy of the premises. *In re ABC Books & School Supplies,* 121 B.R. 329, 330 (Bankr.S.D.Ohio 1990). Congress added § 365(d)(3) in order to ease the burden upon nonresidential lessors caused by the loss of rental income during the post-filing but pre-rejection period by creating an administrative expense claim governed exclusively by the terms of the lease. The legislative history provides:

> In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position.... The bill would lessen these problems by requiring the trustee to perform all the

---

1. The $28,749.54 awarded to Homart as an administrative expense was determined to be the full contractual rent under the leases from the petition date through the effective date of rejection.

obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease. (*In re Longua,* 58 B.R. 503, 505, (Bankr.W.D.Wis.1986, *quoting,* 130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch)).

Based on this legislative history, the majority of cases holds that a lessor is entitled to an administrative expense for rent due under the lease notwithstanding the requirement that expenses be actual and necessary costs of preserving the estate under § 503(b)(1)(A) before they can be accorded administrative expense priority. *See, In re Kenneth John Lunn,* 129 B.R. 476, 477 (Bankr.N.D.Ohio 1991); *In re Laurence R. Smith, Inc.,* 127 B.R. 715, 717 (Bankr. D.Conn.1991); *In re Cardian Mortgage Corp.,* 127 B.R. 14, (Bankr.E.D.Va.1991); *In re Washington Bancorporation,* 125 B.R. 328, 329 (Bankr.D.D.C.1991); *In re ABC Books & School Supplies,* 121 B.R. 329, 331 (Bankr.S.D.Ohio 1990); *In re Narragansett Clothing Co.,* 119 B.R. 388, 391 (Bankr.D.R.I.1990); *In re U.S. Fax, Inc.,* 114 B.R. 70, 73 (E.D.Pa.1990); *In re Damianopoulos,* 93 B.R. 3, 8 (Bankr. N.D.N.Y.1988); *In re Coastal Dry Dock & Repair Corp.,* 62 B.R. 879, 883 (Bankr. E.D.N.Y.1986); and *In re Barrister of Delaware, Ltd.,* 49 B.R. 446, 447 (Bankr. D.Del.1985).

In addition to the legislative history behind § 365(d)(3), the majority finds support for its position in the unambiguous language of § 365(d)(3). The court in *Coastal Dry Dock,* stated:

> In unmistakable terms, Section 365(d)(3), ... requires trustees or debtors-in-possession to timely perform the debtor's lease obligations, including payment of all rents reserved under the lease until the lease is assumed or rejected.... This obligation is made expressly independent of the normal standards for administrative expense claims under § 503(b)(1) and constitutes an administrative expense payable without notice and

a hearing. *Id., citing In re Longua,* 58 B.R. 503, 505 (Bankr.W.D.Wis.1986).

The command of Section 365(d)(3) is clear and unambiguous and this Court agrees with the majority's reading of § 365(d)(3).

Further, policy reasons support the majority's conclusion that § 365(d)(3) provides administrative expense status to post-petition/pre-rejection rent claims. "To rule otherwise would give the [debtor] ... an incentive during the first 60 days of the case not to comply with the prompt payment mandate of § 365(d)(3) if there is a chance the lease will be rejected and may be at an above-market rent or if the debtor has not fully occupied the premises." *Washington Bancorporation,* at 329.

Finally, the rules of construction mandate that the specific language of § 365(d)(3) controls over the more general language of § 503(b)(1)(A). *United States v. Eagle,* 539 F.2d 1166, 1173 (8th Cir.1976). Accordingly, the legislative history, clear language of § 365(d)(3), policy and rules of statutory construction support a holding that § 365(d)(3) provides automatic administrative expense status to rent obligations arising under a lease of nonresidential real property during the post-petition, pre-rejection period notwithstanding the requirements of § 503(b)(1)(A).

The Debtor however, argues that a separate line of cases support its position that a landlord must meet the requirements of section 503(b)(1)(A) before claiming an administrative expense for post-petition, pre-rejection rent payments. *See, In re Daisy/Cadnetix Inc.,* 126 B.R. 87, 90 (Bankr. N.D.Cal.1991); *In re Tammey Jewels, Inc.,* 116 B.R. 292, 295 (Bankr.M.D.Fla.1990); *In re Patella,* 102 B.R. 223, 225 (Bankr. D.N.M.1989); *In re Orvco,* 95 B.R. 724 (9th Cir. BAP 1989). The leading case for this proposition is from the 9th Circuit Bankruptcy Appellate Panel in *Orvco. Orvco* addressed the question of what amount of rent a Chapter 11 debtor was obligated to pay for the 60 day period following its petition for relief. The bankruptcy court ruled that the debtor was liable only for the actual use of the premises and not the

full rent stated in the lease. The lessor appealed and the Bankruptcy Appellate Panel affirmed. In reaching its decision, the bankruptcy court concluded that § 365(d)(3) does not automatically characterize a lessor's claim for rent during the 60 day period as an administrative expense claim; rather, only claims for actual use should be deemed administrative claims. *Id.* at 726. In affirming the lower court, the Bankruptcy Appellate Panel explained:

> In our view, the language of 365(d)(3), "notwithstanding section 503(b)(1)," means that notwithstanding the administrative or non-administrative status of a claim by a lessor, a bankruptcy court must order its payment pending assumption or rejection. It does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under section 503(b)(1)(A) has been completely abrogated. (at 727–28).

Accordingly, under *Orvco* and its progeny, a lessor seeking payment of rent for the post-petition, pre-rejection period period must establish its claim for administrative status under section 503(b)(1)(A).

The Honorable James J. Barta of this district cited with approval the holding in *Orvco* in his opinion *In re Bilyk*, 101 B.R. 586 (Bankr.E.D.Mo.1989). *Bilyk*, however, did not address the issue the before this Court: whether a lessor must meet the requirements of § 503(b)(1)(A) in order to establish an administrative expense for post-petition, pre-rejection rent in light of the language of § 365(d)(3) requiring the trustee or debtor in possession to "timely perform all obligations under an unexpired lease." The issue before the court in *Bilyk*, was determining the amount of a lessor's claim for post-petition use of nonresidential real property by a Chapter 7 trustee in storing property of the Debtor's estate.

In *Bilyk* the debtors filed their Chapter 7 petition on August 9, 1988. A non-residential lease agreement was in effect on the date of filing and was deemed rejected by operation of law under § 365(d)(4)[2] on October 10, 1988, 60 days after filing. Until a sale was conducted on December 17, 1988, the trustee stored property of the debtor's estate on the leased premises. On November 10, 1988, the lessor filed a request for payment of administrative rent expenses. The Court denied the lessor's request for payment on the grounds that the unexpired lease was deemed to have been rejected before the lessors filed their request for payment. Citing *Orvco*, Judge Barta held that the lessors therefore had to establish their administrative expense status under § 503(b)(1)(A).

The Court in *Bilyk* had before it a request for post-petition expenses. This Court is faced with a request for post-petition/*pre-rejection* expenses pursuant to a trustee's obligation to timely perform the obligations of the debtor under § 365(d)(3). Judge Barta specifically stated in *Bilyk* that the question presented to him was not based upon a request to timely perform the debtor's obligations under § 365(d)(3) but was instead a request to determine the amount of a lessor's administrative expense claim for post-rejection rents. For this reason, the holding in *Bilyk* is not applicable to the case at bar. However, to the extent that *Orvco*, and as supported in this district by *Bilyk*, hold that a lessor under an unexpired lease of nonresidential real property must make a request for payment of an administrative rent expense prior to the date of rejection and must meet the requirements of § 503(b)(1)(A) in order to establish his administrative expense status, this Court respectfully disagrees. In a Chapter 11 case a request for payment of post-petition, pre-rejection rent pursuant to § 365(d)(3) need not be made prior to rejection and need not meet the requirements of § 503(b)(1)(A) in order to be given administrative expense priority.

Therefore, based on the legislative history of § 365(d)(3), case law, policy and the

---

**2.** Section 365(d)(4) states in relevant part:
Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unex-

pired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, ... then such lease is deemed rejected....

rules of statutory construction, Homart may establish its claim for an administrative expense priority under section 365(d)(3) without meeting the requirements of § 503(b)(1)(A). Accordingly,

IT IS ORDERED that Debtor's Motion to Reconsider Order Directing Debtor to Immediately Pay Administrative Expenses to Homart Development Corporation is Denied and Homart is entitled to immediate payment as an administrative expense of all amounts due under its lease from the date of filing until the effective date of rejection.