**In re SLIM LIFE WEIGHT LOSS CENTERS, CORP. et al., Debtors.**

**Bankruptcy Nos. 94–21548 (NLW) to 94–21550 (NLW).**

United States Bankruptcy Court, D. New Jersey.

March 31, 1995.

Atkinson & DeBartolo, P.C. by Thomas A. Kalapos, Red Bank, NJ, for Marketplace I, LTD.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, P.C. by Bernard Schenkler, Roseland, NJ, for debtors.

## DECISION

NOVALYN L. WINFIELD, Bankruptcy Judge.

This matter is before the court on the motion by Marketplace I, LTD. (Marketplace), to require the debtors, Slim Life Weight Loss Centers of Mid Jersey, Inc. (Slim Life) to pay administrative rents, pursuant to Bankruptcy Code section 365(d)(3).[1] In support of this motion, Marketplace has submitted a Letter Brief and the Certification of Donna Scoppetuolo, both filed November 7, 1994; and a Supplemental Certification of Donna Scoppetuolo filed November 28, 1994.

Slim Life objects to the motion and submits for the court's consideration: a Statement in Opposition to Application for Administrative Rent filed October 17, 1994; a Memorandum of Law in Opposition to the Motion and the attached Debtor's Documentary Appendix filed November 9, 1994; and a Supplemental Memorandum of Law in Opposition to the Motion along with the Certification of Lawrence Needleman filed November 30, 1994. A hearing was held on this matter on November 14, 1994, at which time the court considered arguments of counsel.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the District Court of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) & (O) as it deals with the determination of an alleged administrative expense claim against the Debtor's estate. The following constitutes this court's findings of fact and conclusions of law made in accordance with Bankruptcy Rule 7052.

## FACTS

Slim Life filed for relief under chapter 11 of title 11, United States Code on March 16, 1994, and was continued in possession of its property and management of its affairs. Slim Life was engaged in the business of the operation of weight loss centers pursuant to a franchise agreement with Nutri/System, Inc. ("Nutri/System"). In March 1990, Slim Life commenced occupancy of an existing Nutri/System weight loss center in the Marketplace Shopping Center, U.S. Route 35, Shrewsbury, New Jersey. Occupancy by Slim Life was pursuant to the terms of an existing lease with a prior lessee, dated March 16, 1989. The lease term expired on April 30, 1994.

Beginning in 1992, Slim Life began having difficulty making timely monthly payments to Marketplace. On July 7, 1993 Marketplace commenced a summary dispossess action against Slim Life, and in or about mid-July, 1993, Slim Life vacated the premises. Slim Life removed all of its valuable equipment, including computers and other personalty, and furniture when it left the premises.

Marketplace acknowledges that Slim Life vacated the premises by July 30, 1993, and that the furniture was removed, but contends that Slim Life failed to notify Marketplace of its intent to vacate. Both parties agree that after Slim Life vacated the premises neither party had further communications with each other. It also appears that in order that it not incur further legal fees, Marketplace discontinued the summary dispossess action after Slim Life left the premises.

Marketplace notified its brokers that the Slim Life space was available. No replacement tenant was found and Marketplace opines that the inability to relet the premises was attributable to the fact that the space had been specially adapted to use as a weight loss center and the cost to restore it to a large open space would exceed $30,000.

Slim Life filed its Chapter 11 petition on March 16, 1994. Marketplace timely filed an unsecured claim for pre-petition rent, in April, 1994 and subsequently, in July, 1994,

1. In re Slim Life Weight Loss Centers, Corp. (94–21548); In re Slim Life Weight Loss Centers of Mid–Jersey, Inc. (94–21549); and In re Slim Life Weight Loss Centers of South–Jersey, Inc. (94–21550) were administratively consolidated by Order of this court dated October 21, 1994.

filed a motion for payment of administrative rent, under 11 U.S.C. § 365(d)(3). Marketplace asserts an administrative claim for rents from the petition date (March 16, 1994) through the expiration date of the lease (April 30, 1994) in the amount of $6,206.35. Slim Life opposes the claim on essentially two grounds. The first is that there was no "unexpired lease" in existence at the petition date. Secondly, Slim Life contends that since it did not occupy the premises post-petition and the lease conferred no benefit upon the estate, the rent does not meet the standard required for an administrative expense under 11 U.S.C. § 365(d)(3) or § 503(b)(1).

## DISCUSSION

Marketplace's claim for administrative rents arises under § 365(d)(3), which provides that the debtor in possession, Slim Life, must timely perform all post-petition obligations under "any unexpired lease of non-residential real property, ..." Slim Life argues that its default on the lease with Marketplace, which occurred prior to the filing of bankruptcy, had the effect of terminating or "expiring" the lease. Thus, the first issue presented is whether an unexpired lease existed as of the petition date. The second issue that the court must examine is whether any actual use and occupancy or benefit to the estate is required for the rent to be accorded administrative status under 365(d)(3).

## I. Whether an Unexpired Lease Existed as of the Petition Date

Slim Life contends that because it abandoned the premises in July, 1993 and thereafter Marketplace took control of the space and attempted to secure a new tenant, a surrender of the premises was effected. Generally, courts have looked to non-bankruptcy law to determine whether a lease was expired at the time the petition was filed. *In re Windmill Farms, Inc.*, 841 F.2d 1467, 1469 (9th Cir.1988).

Because the lease provides that it shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, we must look to the law of Pennsylvania to determine if a surrender was effected. It does not appear that Slim Life's contention regarding surrender of the premises is supported by Pennsylvania law.

Nothing is better settled in Pennsylvania in the law of landlord and tenant than that a tenant for years cannot relieve himself from liability under his covenant to pay rent by vacating the demised premises during the term and sending the key to the landlord. The reason for this is, one party to a contract cannot rescind it at its pleasure.

*Ralph v. Deiley*, 293 Pa. 90, 93, 141 A. 640 (1928).

For the lessee to disengage himself from the obligations arising under the lease there must be a surrender of the leasehold estate. "Surrender is a contractual act, and it occurs only through the consent of both parties, evidenced by an express agreement or unequivocal act of the parties which implies they have agreed to consider the surrender as being made." *Id.* at 94, 141 A. 640.

A surrender can be express or by operation of law. An express surrender requires the lessor to explicitly communicate his or her assent to the surrender. A surrender by operation of law occurs through some act of the landlord so inconsistent with the relation of landlord and tenant and incompatible with the existing terms of the lease as to imply the parties agreed to a surrender. *Jenkins v. Root*, 269 Pa. 229, 232, 112 A. 153 (1920). "Such acts would indicate as a logical and reasonably necessary result that the lessor intended to accept the surrender tendered by the lessees." *Ralph v. Deiley*, 293 Pa. at 94, 141 A. 640. "The burden of proof is on the party alleging the surrender by operation of law to prove it, and, where it is to be inferred from the circumstances or conduct inconsistent with intention to perform, the proof must be clear." *Brill v. Haifetz*, 158 Pa.Super. 158, 162, 44 A.2d 311, 313 (1945).

The bankruptcy court in *In re Allegheny International, Inc.*, 136 B.R. 396 (Bankr. W.D.Pa.1991), applied Pennsylvania law to determine that the premises at issue had not been surrendered. The *Allegheny* court noted that "[t]he issue in Pennsylvania cases is

whether or not there was evidence of an intention on the part of the lessors to accept the lessee's surrender of the lease. This becomes a question of fact." *Id.* at 404. Furthermore, the intention of the parties must be clearly expressed: "This court holds that surrender must be evidenced by something more than a general manifestation of intention, an unequivocal or definitive act must occur." *Id.* For instance, the *Allegheny* court found that a surrender could have been evidenced by a writing declaring the parties intentions. *Id.*

In the instant case, it is undisputed that Slim Life abandoned the leased premises. Both sides agree that this occurred on or about July 30, 1993. However, as noted earlier, an abandonment by itself does not amount to a surrender by operation of law. The Restatement (Second) of Property (Landlord—Tenant) § 12.1(i) explains: "The tenant does not end his obligation to pay rent by abandoning the leased property, unless the landlord accepts what is in effect the tenant's offer to surrender the property, thereby terminating the lease." No express acceptance of surrender by Marketplace, either oral or in writing, has been demonstrated by Slim Life.

The general rule is that repossession by the landlord is not an acceptance of the tenant's offer to surrender.

> The mere fact that [the landlord] resumes possession is not of itself a sufficient foundation upon which to predicate either an acceptance of a surrender or an eviction. It must further be found on evidence that such resumption of possession is not merely for the protection of the property during the absence of the tenant, but is adverse to a reoccupation of it by [the tenant] and a renewal of the relations created by the lease.

*Jonnet Development Corp. v. Dietrich Industries, Inc.,* 316 Pa.Super. 533, 549, 463 A.2d 1026, 1034 (1983). "Taking possession, repairing, advertising the house for rent, are all acts in the interest and for the benefit of the tenant and do not discharge him from his covenant to pay rent." *Wilson Laundry Co. v. Joos,* 200 Pa.Super. 595, 599, 189 A.2d 917, 918 (1963).

In the case sub judice, Marketplace took possession of the property after Slim Life's abandonment and listed it with its brokers in an attempt to find a new tenant. Without more, such action by Marketplace does not evidence acceptance of Slim Life's offer to surrender.

In addition to the general rule allowing Marketplace's action, Slim Life admits that Marketplace re-entered the premises pursuant to the authority of paragraph XXIV of the lease. (Slim Life's Memorandum of Law in Opposition to the Motion at 5). Paragraph XXIV, entitled "Default by Tenant" provides:

> If Landlord, without terminating this Lease, either (a) elects to re-enter and attempts to relet, or (b) takes possession pursuant to legal proceedings.... No such reentry or taking possession of the Premises by Landlord shall be construed as an election on its part to terminate this Lease unless a written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction.

Thus, under the terms of the lease, Marketplace had the right to re-enter and relet the premises without terminating the lease. Slim Life concedes that this is exactly what Marketplace did.

Slim Life bears the burden of proving Marketplace's acceptance of surrender of the lease. *See, Brill v. Haifetz,* 158 Pa.Super. at 162, 44 A.2d 311; *Lawton v. DeAngelo,* 169 Pa.Super. 380, 383, 82 A.2d 900 (1951). As is evident from the foregoing analysis, nothing in the record before the court sustains a conclusion that Marketplace consented to the surrender of the leased premises. It is uncontroverted that after Slim Life vacated the premises there were no further communications between the parties. Thus, the court finds that there was no express acceptance of surrender by Marketplace. Moreover, the efforts to relet the premises were authorized by the terms of the lease between the parties and were obviously intended to minimize the losses occasioned by Slim Life's default. Since Marketplace's efforts were in effect authorized by Slim Life, the court does not find an implied acceptance from its efforts to

find a new tenant. *See, Brill v. Haifetz* 158 Pa.Super. at 162–63, 44 A.2d 311. As a consequence, the lease remained in force as of the date that Slim Life commenced its Chapter 11 case.

## II. Construction of 11 U.S.C. § 365(d)(3)

Section 365(d)(3) provides in pertinent part as follows:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *not withstanding section 503(b)(1) of this title.*[2] (emphasis added).

Marketplace maintains that the language of § 365(d)(3) entitles it to an administrative claim for post-petition rent, without regard to any actual use and occupancy or benefit to the estate. Slim Life contends that since it was not in possession of the premises after the filing, and had not been in possession for 8 months prior to the filing, Marketplace's claim should not be given administrative priority.

The importance of finding the claim to be an administrative expense is that administrative expenses are granted first priority for payment pursuant to 11 U.S.C. § 507.

Two lines of cases address whether § 365(d)(3) obligations should be imposed where there was no post-petition possession of the leased premises by the debtor/tenant. "A minority of reported opinions have taken the view that a lessor still has to meet the requirements of § 503(b)(1) before any of the unpaid, post-petition lease obligations can be granted administrative status." *In re Mr. Gatti's Inc.,* 164 B.R. 929, 935 (Bankr. W.D.Tex.1994). The leading case for this proposition is *In re Orvco,* 95 B.R. 724, 726 (9th Cir. BAP 1989). In *Orvco,* a lease had been rejected automatically, pursuant to § 365(d)(4), when it was not assumed within 60 days. There was little or no post-petition use of the leased premises by the debtor/tenant. The issue before the *Orvco* court was

the status to be accorded to the lessor's post-petition rent claim. The *Orvco* court reasoned:

> In our view, the language of § 365(d)(3) "notwithstanding section 503(b)(1)", means that notwithstanding the administrative or non-administrative status of a claim by a lessor, a bankruptcy court must order its payment pending assumption or rejection. It does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under Section 503(b)(1)(A) has been completely abrogated. Accordingly, we hold that when a lease is deemed rejected, a lessor must establish its claim for administrative status under Section 503(b)(1)(A), the specific section governing such status.

95 B.R. at 728. *See also; In re Daisy/Cadnetix, Inc.,* 126 B.R. 87, 89 (Bankr.N.D.Cal. 1991); and *In re Tammey Jewels,* 116 B.R. 292, 295 (Bankr.M.D.Fla.1990).

On the other hand, the majority view reasons that the obligations imposed by § 365(d)(3) prior to rejection "are not contingent upon any occupancy of the property; rather, they depend only on the existence of an unexpired non-residential property lease." *In re Cardian Mort. Corp.,* 127 B.R. 14, 16 (Bankr.E.D.Va.1991); *See also, In re M.H.I., Inc.,* 61 B.R. 69, 70–71 (Bankr.D.Md.1986); and *In re Worths Stores Corp.,* 135 B.R. 112, 116–117 (Bankr.E.D.Mo.1991).

In contrast to the analysis of the phrase "notwithstanding § 503(b)(1) of this title" undertaken by the minority view, these cases find the language of § 365(d)(3) to be unambiguous and simply apply its "plain meaning."

> Webster's Dictionary defines the term "notwithstanding" to mean in spite of. *See* Webster's Twentieth Century Dictionary 1225 (2d ed. 1983). Under section 365(d)(3), therefore, the trustee must make the payments required under an unexpired nonresidential real property lease in spite of the requirements in section 503(b) that the expense ... be an actual and necessary cost of preserving the estate.

---

**2.** The threshold requirements of 11 U.S.C. § 503(b)(1) are that administrative expenses be

"the actual, necessary costs and expenses of preserving the estate."

**706**

*In re CSVA, Inc.,* 140 B.R. 116, 119–20 (Bankr.W.D.N.C.1992).

 Applying the plain language of § 365(d)(3), in *In re Compuadd Corp.,* 166 B.R. 862, 865 (Bankr.W.D.Tex.1994), the court found that pending assumption or rejection of the lease, the debtor was obligated to pay the rent reserved in the lease even though it was not in possession of the premises. This court reluctantly agrees with both the majority view that the language of § 365(d)(3) mandates the payment of rent in accordance with the lease terms and without regard to whether that rent is an actual, necessary expense of the estate, and with the specific application of that view in *Compuadd.* Accordingly, the court holds that even though Slim Life did not occupy or use the premises leased from Marketplace, it nonetheless is obligated to pay the rent reserved in the lease for the period which followed the petition date and which terminated upon the expiration of the lease. The intent of Congress to require performance of the lease terms without regard to the usual constraints imposed by § 503(b) is evident not only from the plain language of the 1984 amendment to § 365 but also from the fact that the inclusion of subparagraph (d)(3) added performance obligations not previously specified in the section. Though the court shares the policy concerns which underlie the minority view, the court further concurs with the observations of the *Compuadd* court that "[r]egardless of what one might think with regard to the 'irrationality' of the concept, the language is clear and must be enforced." *Id.*

While there may be persuasive policy arguments in support of the minority position advanced by Slim Life, "the bankruptcy court cannot waive or modify Bankruptcy Code requirements that are plain and unambiguous because it agrees with the policy underlying the debtor's arguments." *In re Columbia Gas Systems, Inc.,* 33 F.3d 294, 302 (3rd Cir.1994). These are arguments that should be directed to Congress. *See, United States Trustee v. Price Waterhouse,* 19 F.3d 138, 142 (3rd Cir.1994).

## CONCLUSION

The court finds that the lease between Marketplace and Slim Life was unexpired when Slim Life filed its bankruptcy petition. The court further finds that 11 U.S.C. § 365(d)(3) grants administrative priority to rents due under an unexpired lease of non-residential real property in spite of the requirements of 11 U.S.C. § 503(b)(1). Therefore, Marketplace's motion to require Slim Life to pay administrative rents is hereby GRANTED. Counsel for Marketplace shall settle an appropriate order on five days notice to Slim Life.